## Berghaus *against* Calhoun.

The acknowledgment of a debt, to preclude the operation of the statute of limitations, must be so distinct and palpable in its extent and form, as to preclude hesitation about the debtor's meaning.

ERROR to the common pleas of *Dauphin* county.

Debt on promissory note. N. R. Smith, to the use of Dr Calhoun, against Charles L. Berghaus. This cause was tried upon the plea of *non assumpsit infra sex annos*. In order to avoid the effect of the lapse of time, the plaintiff gave in evidence by a witness, as follows:

"About the 1st of April 1835, Dr Calhoun wrote me, that the defendant owed a claim for lectures, and asked me to call on him. I called, and he told me, it had been so long, he had almost forgotten the claim; said he was going to Philadelphia shortly, and he would call on Dr Calhoun himself.

"Dr Calhoun, being about to leave the city, requested me to request Dr Berghaus to pay the note or renew it. I called and told this to Dr Berghaus. He said he was going to Philadelphia in a few weeks, and would call on Dr Calhoun himself, and give him all the satisfaction he could wish. He told me it was impossible for him to satisfy the claim at that time, but said he would go to Philadelphia in two or three weeks and call on Dr Calhoun himself, and give him all the satisfaction he could wish. This conversation, was ten days or two weeks after the first conversation.

"I had the note in my possession three or four weeks after this, and called the third time. Defendant told me Dr Calhoun had written to him. I told him Dr Calhoun had sent the note to me. He said if Dr Calhoun could not wait till he would go to Philadelphia himself, he might do the best he could with it.

"I showed him the note. He did not object to its being the same note we had spoken of. I told him the note was for his attending lectures. He did not object.

"When I showed him the note, he looked at it, and handed it back and said if Dr Calhoun could not wait till he would go to Philadelphia, he might do the best he could with it."

The defendant requested the court to charge the jury, that upon this evidence of the witness, the plaintiff was not entitled to recover.

The court below referred the evidence to the jury, with the instruction, that if the defendant's declarations amounted to a recognition of the debt as still existing, they took the case out of

the operation of the statute. Verdict for plaintiff for 104 dollars 80 cents, damages.

*Johnston,* for plaintiff in error.
*Foster,* for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—An acknowledgment of indebtedness, though not itself a promise, is held to be evidence of it. In this, we see a remnant of that judicial repugnance to the statute of limitations, which had at one time nearly abolished it. It follows neither necessarily nor naturally, that the acknowledged existence of a debt, barred only so far as regards the means of its enforcement, implies a promise to pay it; and an express promise it is not pretended to be. It is but the concession of a fact, which the plaintiff might prove as effectively by any other evidence; for it is a postulate of the doctrine that the statute, which takes away the remedy, leaves the existence of the duty untouched. Were the fact of indebtedness, therefore, the efficient cause of the promise, the statute would be a dead letter; for the plaintiff would make out a case to recover in consistence with it by making out his original demand. But a naked duty or moral obligation, though a sufficient consideration for an express promise, raises no promise by implication of law; consequently, though we might accurately suppose the recognition of a debt to be evidence of consideration, we might not, agreeably to admitted analogies, suppose it to be evidence of a promise, because it is equally consistent with a declared determination not to pay. It is established, however, by decisions which we dare not shake, that it may, by legal intendment, be evidence of a promise; yet to avoid the uncertainty and insensible encroachment on the statute that would ensue did we attempt to shape our course by the lights and shadows of former precedents, we may require the acknowledgment of the demand, as a debt of legal obligation, to be so distinct and palpable in its extent and form, as to preclude hesitation. What evidence have we, then, of acknowledgment? At first the defendant told the plaintiff's agent that the demand was of such long standing that he had almost forgotten it; but that he would call on the plaintiff himself. There certainly was no direct acknowledgment in that; and the time is gone by for fixing a debtor with every inference of admitted obligation which he did not specially repel. Being urged a second time, he said it was impossible for him to pay then, but he would call on the plaintiff in two or three weeks, " and give him all the satisfaction he could desire." As to what? Undoubtedly as to the course he might subsequently adopt. To say it was not possible to pay then, was not to say, except by implication, that it would be possible or requisite to pay thereafter; and the promise to give the plaintiff satisfaction is more indefinite

[Berghaus v. Calhoun.]

still.  If unqualified payment were meant, it would have been as easy, and more natural, to call it by its name; but such a promise looks more like an engagement to compromise, or give convincing reasons why there should not be payment at all.  It was manifestly intended for a genteel put-off, reserving the question of ultimate liability, as before, for further consideration.  This is the pinch of the case; for being pressed a third time, the defendant set the plaintiff at open defiance: and this is all we have for evidence of explicit and unqualified assumption.  That he did not dispute the validity of the note, adds not a grain to the weight of it; for no man is held to make an express promise by holding his tongue.  There was not, therefore, that straight-forward admission of legal indebtedness which is held to be competent evidence of a new promise.

Judgment reversed, and a *venire facias de novo* awarded.